Dear Mr. Bentson:
This office is in receipt of your request for an opinion of the Attorney General in regard to Act 1116 of the 1997 which amended and reenacted R.S. 50:172(A) and repealed numerous statutes. The title to the act states it is to "abolish certain inactive boards, commissions, districts, and authorities" and "to repeal the functions, duties, powers, commissions, districts, and authorities of such inactive entities". This included repeal of R.S. 38:291(O), 38:304.1, 38:343, and 38:344 which were relative to the St. Tammany Levee District. You indicate the statutes were repealed without addressing disposition of assets, obligations, contracts or employee responsibility of the abolished entities.
Accordingly, you ask what procedures will take place regarding the assets, obligations, contracts and property transfer or acquisition; and what action you should be taking as Secretary of the St. Tammany Levee District.
In Atty. Gen. Op. 89-259 this office, with reliance upon Boardof Com'rs v. Dept. of Natural Resources, 496 So.2d 281 (La. 1986), found that the 1974 Louisiana Constitution confirmed the well settled principle that a levee district is a creature of the state, and noted that the court infers that "the legislature possesses the power and authority to abolish levee district, provided no such action shall impair the obligation of any outstanding bonded indebtedness or of any other contracts of said levee districts." Therefore, indebtedness and contracts must be protected in the dissolution of the levee district.
The fact that the act fails to address disposition of assets and obligations may be because the act states it is "to abolish certain inactive boards, commissions, districts and authorities," and "to repeal the functions, duties, powers and authority of such inactive entities". However, we have been informed that the St. Tammany Levee District is not inactive, although there are no bonds and the assets exceed the debts.
We find that laws relating to levee districts were amended and reenacted by Act 785 of 1985 to consolidated into a single comprehensive scheme the many statutory provisions relating to particular levee districts. What was once a mandate for district funds to be deposited with the State Treasurer was changed by the Act, and R.S. 38:309 provides in part that "all funds of the board may be deposited with the state treasurer to the credit of the district, * * * and all warrants thereon by the President of the Board shall specify the indebtedness the warrants are intended to liquidate, in part or in whole and that the funds shall not be drawn from the treasury except on the warrant of the state treasurer." Thus, by the Act the deposit with the State Treasurer became permissive.
In Atty. Gen. Op. No 92-141 it was stated that at that time the State Treasurer advised this office that the levee districts depositing funds with that office were those few with outstanding bonds, whereas we have been informed that St. Tammany Levee District has no bond indebtedness. However, in order to enable any obligations to be met by the state treasurer from the deposited funds, the books and records would also have to be sent to the Department of Administration office of Statewide Reporting and Accounting.
Thus, part of the problem of the dissolution of the levee district could be met by depositing the funds of the board with the state treasurer and the funds drawn on a warrant from that office for any indebtedness; and this would also answer in part your inquiry as to what action you should be taking.
In Atty. Gen. Op. No. 81-19 this office was presented with the question as to the status of a levee district after merger and consolidation into a political subdivision under Art. VI, Sec. 16
of the Louisiana Constitution. That Article permits a local governmental subdivision to consolidate and merge into itself any special district or local public agency, and vests the local governmental subdivision with all of the rights and powers of the local public agency. This office stated when a levee district is merged and consolidated into a political subdivision the levee district ceases to exist, and the political subdivision assumes the functions and obligations of the subdivision. The district in question was not involved in a merger.
This office has concluded that the St. Tammany Levee District was not created pursuant to Act 779 of 1982 which had authorized its creation by the police jury since it took no action before the 1985 Act, but was created by the 1985 legislation, Atty. Gen. Op. No. 89-571. As stated above this was to consolidate the regulation of the levee districts.
The Louisiana Supreme Court stated in the Board of Commissioners
case, supra, that a levee board is to discharge the state's duties of flood protection, and property is placed under its control for supervision and administration with "the land to all practical intents and purposes being still the property of the state." It would follow the assets, obligations and property would be the property of the state and the state would be the entity to assume responsibility by the dissolution.
However, we also note that in Atty. Gen. Op. No. 96-168 it was recognized that the Louisiana Supreme Court declared the legislation creating North Lafourche Conservation, Levee and Drainage District unconstitutional and all acts done under such statute were void, and NLCLDD had no legal status and did not exist. This office recognized the Court had the power to provide for the disposition of NLCLDD's property, obligations and responsibilities, but those issues were not addressed, and Bill 223 creating a new district does not address the disposition of the old district's property, obligations and responsibility either. Accordingly, this office suggested the only way to adequately resolve the answer regarding the disposition of the assets and obligations of the district as well as the responsibilities of its Commissioners was by declaratory judgment. This seems particularly appropriate inasmuch the dissolution of the District dissolves the positions connected with it, which we find would include your position.
We hope this sufficiently answers your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: September 17, 1997
Date Released: